UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA CHRISTINE BALLESTERO,<br><br>    Petitioner,<br><br>    v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>    Respondent. | No. 1:18-cv-00798-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

### I.   **Introduction**

Plaintiff Diana Christine Ballestero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 13, 14 and 15. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 5 and 6.

1

## II. Procedural Background

On August 9, 2012, Plaintiff filed an application for disability insurance benefits alleging disability beginning January 11, 2012. AR 1409. The Commissioner denied the application initially on January 28, 2013, and upon reconsideration on June 5, 2013. AR 1409. On August 2, 2013, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 1409.

Administrative Law Judge Edward C. Graham presided over an administrative hearing on July 25, 2014. AR 24-39. Plaintiff appeared and was represented by an attorney. AR 24. Impartial vocational expert Jeanine Metildi (the "VE") also testified. AR 24.

On August 22, 2014, the ALJ denied Plaintiff's application. AR 1409-14. The Appeals Council denied review on September 9, 2015. AR 6-9.

On November 30, 2015, Plaintiff filed a complaint in this Court. *Ballestero v. Comm'r*, Doc. 1 (E.D. Cal. Nov. 30, 2015) (No. 1:15-cv-01798-SKO). On February 22, 2017, the Court reversed the ALJ's denial of benefits and remanded the case for further proceedings to consider the opinions of the state agency physicians, Drs. Greene and Wilson. *Id.*, Doc. 19 at 6; AR 1507-18.

On April 27, 2017, the Appeals Council referred the case to an administrative law judge. AR 1521-22. Administrative Law Judge Robin Rosenbluth presided over the remand hearing on January 26, 2018. AR 1436-65. Plaintiff appeared and was represented by an attorney. AR 1436. Impartial vocational expert Dr. Heidi Paul (the "VE") also testified. AR 1436.

On April 6, 2018, ALJ Rosenbluth denied Plaintiff's application for benefits. AR 1418-29. On June 12, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background [3]

### A. Plaintiff's Testimony

At the time of the second hearing, Plaintiff (born February 24, 1957) continued to live with her husband. AR 1440. Except for assisting her daughter with after school childcare in

---

[3] This opinion does not restate the factual background set forth in *Ballestero v. Comm'r*, Doc. 19 (E.D. Cal. Nov. 30, 2015) (No. 1:15-cv-01798-SKO).

2015, she had not worked since the Bank of the Sierra discharged her for excessive absences in 2012. AR 1441, 1443. Although Plaintiff needed money, she did not "know if she was really looking for a job." AR 1442. In 2015, Plaintiff's daughter paid her approximately $2800.00 to be present in the daughter's home for approximately two hours from the time Plaintiff's three grandchildren (aged 7, 9 and 11) returned from school until their parents returned from work. AR 1443. Plaintiff stopped watching the children after about six months because the work was too difficult for her. AR 1446.

Plaintiff testified that when she stands longer than one hour, she is in great pain and becomes "nauseous and sick to my stomach." AR 1446. She feels dizzy and needs to sit down for 30 to 45 minutes. AR 1446-47. She has severe neck and back pain which has been worsening since Plaintiff was in her thirties. AR 1447. Although recent cervical spine surgery was intended to improve her condition, it caused Plaintiff to develop trigeminal neuralgia, which causes severe pain in Plaintiff's head and neck, and disturbs her balance. AR 1448. Plaintiff also suffered from pain in her hands which caused her to drop things. AR 1452. She needed surgery to replace her thumb joint. AR 1452

Plaintiff tried a TENS unit,[4] ultrasound treatments, physical therapy and acupuncture, but none of those treatments helped her. AR 1449. She took Percocet which "help[ed] somewhat," but was not sufficient on her bad days. AR 1449. Epidural injections were effective but caused a bad reaction that led to having an auto accident. AR 1450.

Plaintiff stopped using morphine for pain relief because it constipated her and caused emotional problems. AR 1454. Plaintiff tried group therapy but did not like to open up in front of other participants. AR 1454. Plaintiff's insurance did not cover individual therapy. AR 1456. She was taking Celexa and Xanax. AR 1454.

On a typical day Plaintiff watched television, walked around her house and prepared lunch. AR 1451. She was able to take care of her personal needs. AR 1451. Plaintiff's daughter did the housework for Plaintiff. AR 1451.

---

[4] Plaintiff expressed disbelief when ALJ Rosenbluth confronted her with the information that Plaintiff's medical records indicated that the TENS unit produced effective pain relief. AR 341, 1450.

3

**B. Medical Records**

Because this appeal raises no issues concerning the medical evidence, this factual background statement addresses subsequent medical records only briefly to provide an overview of Plaintiff's medical treatment following the earlier decision. Following the prior hearing decision (2015), Plaintiff continued to experience frequent urinary tract infections and to receive regular treatment for her dry eyes and foot abnormalities (bunions and calluses).

In July 2015, Plaintiff complained of pain in her right fifth finger after a window fell on it. AR 2044. She also complained of left arm pain. AR 2044. In September 2015, Plaintiff again reported that she had right hand pain since she had incurred a traumatic crush injury to her right hand three weeks earlier. AR 2048. Plaintiff suspected that she had broken her right fifth finger. X-rays showed no significant abnormality. AR 2048. Myungsun James Moon, M.D., noted that alignment was normal and no significant joint disease or soft tissue abnormality was apparent. AR 2048. Erica Lyn Romblom, M.D., noted that she could refer Plaintiff to occupational therapy to address both the pinkie finger and Plaintiff's painful thumb. AR 2066.

In November 2015, Plaintiff saw Francisco Marquez, M.D., for severe pain in her left wrist and left index finger. AR 2103. Dr. Marquez observed tenderness, a normal range of motion, no bony tenderness, no swelling, no effusion, no crepitus and no deformity. AR 2104. After reviewing x-rays, Thomas Hongsuh Kim, M.D., reported that he observed no fracture, joint disease or soft tissue abnormality. AR 2016. Orthopedist Min Jun Park, M.D., diagnosed tenosynovitis of the left radial styloid and provided a cortisone injection and splint.[5] AR 2122-27.

Plaintiff had successful cervical spinal fusion surgery in May 2017. AR 1662-65. Post-operative examinations indicated improved range of motion, increased reflexes, intact sensation and no tenderness. AR 1659-61, 1666-67. The cervical spine was normally aligned and not tender. AR 1667.

///

///

---

[5] Following a change in insurance at the end of November 2015, Plaintiff stopped receiving treatment at Kaiser Permanente and began a relationship with High Desert Medical Group.

4

## IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

### VI. Summary of the ALJ's Decision

Administrative Law Judge Rosenbluth found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 11, 2012. AR 1420. Her severe impairments included "degenerative disc disease of the cervical, thoracic and lumbar spine, status-post anterior cervical discectomy and fusion from C3-C6; and, migraine headaches. AR 1421. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). AR 1424.

The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently, and to sit, stand and walk six to eight hours in an eight-hour workday. AR 1424. Plaintiff could only occasionally perform postural activities; must avoid climbing ladders, ropes, and scaffolds; and, avoid concentrated exposure to extreme cold, vibrations, unprotected heights and dangerous machinery. AR 1424.

Plaintiff was capable of performing her past relevant work as a bank teller. AR 1428. Accordingly, the ALJ found that Plaintiff was not disabled from July 11, 2012, through April 6, 2018 (the date of the hearing decision). AR 26.

///

///

**VII. The ALJ Did Not Err in Rejecting Plaintiff's Testimony**

Plaintiff's only contention on appeal is that the ALJ erred in rejecting Plaintiff's testimony about her pain, symptoms and limitations. Defendant counters that the ALJ appropriately rejected Plaintiff's testimony as not fully supported by the record. After reviewing the record as a whole and applicable law, the Court finds that sufficient evidence supports the ALJ's conclusion. Even if the Court might have interpreted the evidence differently, because evidence in the record could reasonably support either outcome, the Commissioner's interpretation must stand. *See Flaten v. Sec'y, Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). To determine whether the ALJ's findings are supported by substantial evidence, a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In this case, the ALJ rejected Plaintiff's testimony concerning the severity of her symptoms and limitations as inconsistent with objective medical evidence as a whole. AR 1427.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's

"medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 1425. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he/she makes specific findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15; *Smolen*, 80 F.3d at 1281. It is not sufficient for the ALJ to make general findings; he/she must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989)). *See also Bunnell*, 947 F.2d at 34 (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* at 345 (internal quotation marks and citations omitted).

However, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of his or her analysis of the record as a whole, an ALJ properly

considers whether the medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence").

In assessing the claimant's credibility, the ALJ may also use "ordinary techniques of credibility evaluation," considering factors such a lack of cooperation during consultative examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek treatment, inconsistencies between the testimony and conduct, and inconsistencies between daily activities and the alleged symptoms. *Tonapetyan,* 242 F.3d at 6; *also see Smolen*, 80 F.3d at 1284; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (including as factors claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties about the nature, severity, and effect of the alleged disabling symptoms). In addition to objective medical evidence, the ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the alleged pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of prescribed pain medication; (5) pain relief treatments other than medication; other methods used to relieve pain; and (6) other factors concerning functional limitations and restrictions due to pain. 20 C.F.R. §§ 404.1529(c), 416.929(c).

"If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

///

After summarizing Plaintiff's testimony and reports through the proceedings as a whole, ALJ Rosenbluth examined the medical documentation of Plaintiff's symptoms and treatment over the years, documenting her findings with citations to the record. AR 1425-27. The record indicated that Plaintiff had a long history of back and neck pain extending well beyond the alleged onset date, which Plaintiff's physicians diagnosed as multilevel degenerative disc disease. AR 1425-26. Although doctors noted Plaintiff's condition to be worsening from October 2002 to December 2011, they generally described her condition as "mild" and lacking "definitive root impingement or central stenosis." AR 1425-26.

In August 2012, Anupam Singla, M.D., noted Plaintiff's recent lumbar steroid injections and a decreased range of motion and tenderness. AR 1426. Later that year, Plaintiff began treatment with pain management specialist, Thuong Vo, M.D., who treated her with epidural and trigger point injections. AR 1426. "An MRI of the lumbar spine performed in December 2012 showed the following: multilevel discogenic disease, most pronounced at L1-L2; multilevel mild-to-moderate foraminal narrowing slightly increased since the prior study but with no gross evidence of exiting nerve root impingement and no evidence of stenosis at any level." AR 1426 (citations to exhibits omitted).

In October 2013, Plaintiff began pain management treatment with Radha Peram, M.D. AR 1426. Dr. Peram's examination revealed an antalgic gait, mildly decreased range of motion and diffuse tenderness in the upper and mid trapezius and lumbar paraspinal and sacroiliac region. AR 1426. Straight leg raising tests were negative, and motor strength was full. AR 1426. Plaintiff asked Dr. Peram to help her taper off opioid pain medications.[6] AR 1426. By December 2013, Plaintiff was "doing well," and by February 2014, she was completely off morphine. AR 1426.

In late 2014, Plaintiff told Dr. Singla that her lower back pain was getting worse. AR 1426. Although Plaintiff had a normal range of motion and normal strength, and a normal left hip

---

[6] Plaintiff testified that she did not like taking morphine, which constipated her and negatively affected her mental health and social interactions. AR 1454. She stated that she had remained off morphine because it was "too hard on my body, so I'd just rather live through pain than go through that. It [morphine] was just too much on me." AR 1451-52.

x-ray, Dr. Singla observed that Plaintiff was limping and had diffuse tenderness in her upper and mid trapezius and lumbar paraspinal and sacroiliac region. AR 1426. Dr. Singla noted that an MRI showed degenerative changes and a disc bulge with possible left L3 impingement. AR 1426. Notwithstanding, Plaintiff only sporadically saw Dr. Peram for pain management. AR 1426. In May 2016, Plaintiff returned to Dr. Vo, who treated her with Percocet in 2016 and 2017. AR 1426.

After x-rays in March 2017 revealed that the Plaintiff's degenerative disc disease had worsened in the cervical and lumbar regions of her spine, Plaintiff initiated treatment with neurologist Vijay Shanmugam, M.D., and complained of persistent radiating neck pain that was not relieved by epidural injections or physical therapy. AR 1427. Dr. Shanmugam's examination of Plaintiff revealed stable gait, mildly hyper-reflexic upper and lower extremities bilaterally, and no weakness. AR 1427.

In May 2017, neurosurgeon Kamran Parsa, D.O., reviewed magnetic resonance images of Plaintiff's cervical spine and observed advanced degenerative changes from C3 through C6. AR 1427. On May 26, 2017, Dr. Parso performed an anterior cervical discectomy and fusion. AR 1427. By July 2017, Plaintiff reported significant improvement including improved balance and relief from headaches and right arm pain. AR 1427. Plaintiff reported continued improvement in August 2017. AR 1427.

After noting that Plaintiff also received treatment for migraine headaches, ALJ Rosenbluth wrote:

> [A]fter considering the objective medical evidence regarding all of claimant's physical conditions, the undersigned finds that the clinical findings simply fail to support the alleged severity of symptoms and degree of limitations. Weighing all relevant factors, the undersigned concludes that the objective medical evidence simply does not warrant any additional limitations beyond those established in the residual functional capacity contained herein. The undersigned specifically notes that the medical records routinely suggest that the claimant continues to be relatively capable of performing activities of daily living and has even, at times, assisted her daughter with childcare. Moreover, the undersigned notes that the claimant's testimony that recent cervical fusion has worsened her symptoms is simply not consistent with the evidence (described above)

///

> documenting improvement in symptoms and functionality following her spinal surgery.

AR 1427 (citations to exhibits omitted).

The hearing decision sets forth abundant evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully credible. The Court will not second guess the ALJ's assessment of Plaintiff's credibility.

### **VIII. Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Diana Christine Ballestero.

IT IS SO ORDERED.

Dated: **July 1, 2019**  /s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE